IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TOM LEWIS, *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | Case No. C2-11-CV-0058 |
| v. : | |
| : | JUDGE ALGENON L. MARBLEY |
| THE HUNTINGTON NATIONAL BANK, : | |
| : | Magistrate Judge Terrence P. Kemp |
| Defendant. : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This is an action under federal and state law for unpaid overtime wages and related relief. The matter is now before the Court on two motions: Plaintiffs' Motion for Conditional Class Certification, Expedited Discovery, and Court-Supervised Notice to Potential Opt-in Plaintiffs Pursuant to 29 U.S.C. § 216(b); and Plaintiffs' Emergency Motion for Protective Order, Cease and Desist Order, the Immediate Granting of Plaintiffs' Motion for Court Supervised Notice, Sanctions, and Corrective Actions (Docs. 30 & 40). The Court heard oral argument on both of these motions, and the matters are now ripe for decision. For the reasons that follow, the Plaintiffs' Motion for Conditional Class Certification is **GRANTED** in part, and the Plaintiffs' Emergency Motion is **GRANTED** in part.

**II. BACKGROUND**

**A. The Lawsuit**

Plaintiffs are current or former Mortgage Loan Officers ("MLOs") employed by Defendant The Huntington National Bank ("Huntington") during the time period from January

2008 to the present. As MLOs, Plaintiffs sell Huntington's residential mortgage products. Huntington pays the majority of its MLOs according to its Production Commission and Incentive Compensation Plan ("Plan"). Huntington pays those MLOs who work out of Huntington's corporate offices under its Production Commission and Incentive Compensation Plus Salary Plan ("Salary Plan"). All MLOs are paid under one of these two plans. MLOs paid under the Plan receive only commission earned for loans closed, and MLOs paid under the Salary Plan receive a combination of commission and salary. Huntington pays its MLOs in bi-monthly draws that it offsets against the employee's commission earnings, which are paid only after a mortgage closes.

Plaintiffs challenge two of Huntington's wage practices. First, although MLOs routinely work more than forty hours per week,[1] neither the Plan nor the Salary Plan provide for payment of overtime. Plaintiffs allege that, to their knowledge, Huntington never paid overtime to any of its MLOs. Second, Huntington deducted from the bi-monthly draws money that it failed to recoup from mortgage applicants and the cost of the MLO's personal assistant. These deductions were made without the MLOs' consent and were for losses for which the MLOs were not responsible.

Plaintiff Tom Lewis filed a three-count complaint on January 18, 2011 (Doc. 1). Plaintiffs then filed two amended complaints, the first adding Plaintiff Matthew Coulter and the second removing several named defendants and replacing them with Defendant Huntington (Docs. 15 & 26).[2] The Second Amended Complaint, filed on March 11, 2011, includes three claims: (1) violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq*., on behalf of all MLOs employed by Huntington since January 18, 2008, denied overtime, and compensated

---

[1] Plaintiff Tom Lewis, for example, states in an affidavit that he routinely worked over seventy hours per week to ensure that deadlines were met.

[2] Huntington is now the sole remaining defendant in this case.

based under the Plan or the Salary Plan ("Nationwide Class")[3]; (2) violations of the Ohio Minimum Fair Wage Standards Act ("Ohio Wage Act"), Ohio Rev. Code Ann. §§ 4111.01, 4111.03, & 4111.10, on behalf of all MLOs employed at Huntington's Ohio branches since January 18, 2008, denied overtime, and compensated under the Plan or the Salary Plan ("Ohio Subclass"); and (3) violations of the Ohio Prompt Pay Act ("Ohio Pay Act"), Ohio Rev. Code Ann. §§ 4113.15, on behalf of the Ohio Subclass. The Plaintiffs seek class certification under Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), an injunction prohibiting Huntington from engaging in future FLSA or Ohio Wage Act violations, lost wages, liquidated damages, and litigation costs. Ten current and former MLOs have filed Notice of Consent to join the lawsuit (Docs. 2, 12, 17, 27, 38, & 43).[4]

### B. Payment of Back Wages

The FLSA requires covered employers to pay overtime wages to employees who work more than forty hours per week unless the employees fall into the category of exempted employees. 29 U.S.C. §§ 207(a)(1) & 213(a). One such category includes those employees working in a bona fide administrative capacity as defined by regulations issued by the Secretary of Labor. 29 U.S.C. § 213(a)(1). The DOL issued regulations in 2004 addressing the exemption status of employees in the financial services industry. *See* 29 C.F.R. § 541.203(b). In 2006, the DOL issued an Opinion Letter stating that the administrative exemption applies to mortgage loan officers who perform a set of specified duties. Then, in March 2010, the DOL issued its Administrator's Interpretation 2010-1 concluding that the typical mortgage loan officer does not

---

[3]The putative Nationwide Class works or worked in offices in Ohio, Indiana, Kentucky, Michigan, Pennsylvania, and West Virginia.

[4] Tom Lewis and Matthew Coulter will be referred to as the "Named Plaintiffs," the ten additional plaintiffs will be referred to as "Opt-in Plaintiffs," and the Named Plaintiffs and the Opt-in Plaintiffs collectively will be referred to as "Plaintiffs."

qualify for the administrative exemption.

Huntington Bank believed on the basis of the 2004 regulations and the 2006 Opinion Letter that the FLSA did not oblige it to pay overtime wages to its MLOs.[5] According to Annette M. Houck, Huntington's Associate General Counsel, Huntington in fact created the MLO position in response to the 2004 regulations. In 2010, after the DOL issued its Administrator's Interpretation 2010-1, Huntington decided to reclassify the MLO position as non-exempt.[6] Huntington required MLOs to record their hours beginning in February 2011, and in March 2011, Huntington began to identify MLOs' overtime wages from March 25, 2010 through February 2011. In that regard, Huntington told current MLOs to collect any documentation they may have on their hours before meeting with the MLOs individually. Then, beginning in March 2011, Huntington's human resources personnel and management staff met with each individually to decide how much overtime the MLO had worked.

In April 2011, Huntington distributed "Acknowledgment of Back Wage Payment" forms to the MLOs who had participated in the back wage interviews. The Acknowledgment listed the number of overtime hours the MLO had worked and the resulting amount of the back wage payment. The Acknowledgment states that the MLO has "reviewed the attached summary of overtime hours, and it accurately reflects the overtime hours that [the MLO] worked between March 25, 2010 and April 2, 2011." An MLO who signed the Acknowledgment has agreed that he "disclosed to the Bank all hours that [he] ha[s] worked, including overtime," and that the "overtime pay calculation is accurate, and there are no additional wages or payments due to

---

[5]The Court takes no position at this time on whether Huntington's legal interpretations or classification decisions were either reasonable or correct.

[6]Huntington does not, however, concede that Administrator's Interpretation 2010-1 is legally enforceable.

[him]." According to Huntington, most MLOs who participated in the interview process received their back wage payments on May 13, 2011, regardless of whether or not they signed the Acknowledgment.

### III. ISSUES AND DISCUSSION

#### A. FLSA Class Certification

The Court will first address the Plaintiffs' motion for conditional class certification. As clarified at oral argument, Huntington does not directly challenge the Plaintiffs' right to conditional class certification for the Nationwide Class. Instead, Huntington's responsive memorandum argues for its entitlement to partial summary judgment on the overtime claims. Discovery on the summary judgment motion has not yet completed (*see* Doc. 37). In this matter, time is of the essence because "the commencement of a collective action under § 216(b) does not toll the statute of limitations period for plaintiffs who have failed to opt-in." *Musarra v. Digital Dish, Inc.*, No. C2-05-545, 2008 U.S. Dist. LEXIS 110003, at *7 (S.D. Ohio Mar. 24, 2008).[7] This Court, therefore, concludes that the motion for conditional class certification should be addressed before Huntington's defense on the merits is ripe. *Accord Heaps v. Safelite Solutions, LLC*, No. 2:10 CV 729, 2011 U.S. Dist. LEXIS 40089, at *4 (S.D. Ohio Apr. 5, 2011) (rejecting defendant's argument that conditional certification should be denied because defendant's policy was lawful because the argument "relates to the merits of this action and is not the relevant inquiry at this stage of the proceedings"); *Bollinger v. Residential Capital, LLC*, 2011 U.S. Dist. LEXIS 1367 (W.D. Wash. Jan. 5, 2011) (granting conditional class certification under FLSA but denying motion to dismiss based on affirmative defenses).

---

[7] Under 29 U.S.C. § 255(a), "[a] § 216(b) action may be commenced within two years after the cause of action accrued, or within three years if the cause of action arises out of a willful violation." *Musarra*, 2008 U.S. Dist. LEXIS 110003, at *7.

Although Huntington presents no direct challenge to the Plaintiffs' entitlement to conditional class certification, the Court will briefly explain why it concludes that the Plaintiffs' have carried their burden of showing entitlement to certification.

Conditional class certification for FLSA collective actions is available under 29 U.S.C. § 216(b). At the notice stage before discovery has occurred, Plaintiffs must only make a modest showing that they are similarly situated to the proposed class of employees. *Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862, 865 (S.D. Ohio 2005). "In order to establish that other employees are similarly situated to the named plaintiff, the named plaintiff need only show that [his] position [is] similar, not identical, to the positions held by the putative class members." *Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002) (internal citations omitted). Thus, similarly situated class members under FLSA are those whose causes of action accrued in approximately the same manner as those of the named plaintiffs. *Id.* (citing *Miklos v. Golman-Hayden Companies, Inc.*, No. 2:99-CV-1279, 2000 U.S. Dist. LEXIS 22352, at *1 (S.D. Ohio Oct. 24, 2000)). Application of this "fairly lenient standard . . . typically results in conditional certification." *Comer v. Wal-Mart Stores*, Inc., 454 F.3d 544, 547 (6th Cir. 2006) (internal quotations omitted).

Most courts have required plaintiffs to produce a factual basis for the allegation of class-wide FLSA violations. *See Pritchard*, 2010 F.R.D. at 595. The Court should consider "'whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists.'" *Heaps*, 2011 U.S. Dist. LEXIS 40089, at *6 (quoting *Olivion v. GMAC Mortgage Corp.*, 374 F.Supp. 2d 545, 548 (E.D. Mich. 2004)); *see also Sniffen v. Spectrum Indus. Serv.*, 2007 U.S. Dist. LEXIS 35206, at *4 (S.D. Ohio Feb. 13,

2007) (granting conditional class certification where plaintiffs submitted affidavits and payroll records showing failure to pay overtime).

In this case, all factors weigh in favor of conditional certification. In support of their motion, the Plaintiffs have offered the allegations in their complaint and declarations of the Named Plaintiffs. This evidence shows that the putative Nationwide Class all perform the same job functions and are all compensated according to either the Plan or the Salary Plan, both of which implement the same system of payment for commission earnings. Additionally, Huntington has provided the affidavit of Annette Houck, Huntington's Associate General Counsel and Senior Vice President, who admits that all MLOs perform identical job duties and are compensated according to a unified system. Thus, the Plaintiffs have produced some evidence supporting their contention that the putative class was subject to a common policy and are therefore similarly situated. Moreover, named Plaintiff Lewis claims that there were approximately 175 active MLOs at the time he resigned in January 2011. This suggests that the putative class of current or former employees is a manageable size.

For the foregoing reasons, the Court **GRANTS** the Plaintiff's request for conditional class certification of the Nationwide Class.

### B. Protective Order and Cease and Desist Order

The Plaintiffs contend that Huntington's recently-concluded overtime back wage payment process was misleading and coercive and ask the Court to intervene. The Plaintiffs have raised two categories of complaints. First, the Plaintiffs challenge the Acknowledgments as misleading and void as a matter of law. Second, the Plaintiffs allege that Huntington has harassed or intimidated Named or Opt-in Plaintiffs in an attempt to discourage other MLOs from joining the lawsuit.

The Plaintiffs first argue that the Acknowledgments are deficient because they do not inform the MLOs that Huntington is obligated to pay back wages regardless of whether they sign the Acknowledgments; they improperly place the burden on the MLO to disclose all accrued overtime hours; they require the MLO to affirm that their disclosure of accrued overtime hours is complete, which could be used to limit the amount of back wages to which the MLOs are entitled; they fail to inform the MLOs that they could be entitled to overtime wages prior to March 24, 2011 and other relief; and they fail to inform the MLOs that they may join the current lawsuit even if they sign the Acknowledgment.

Second, Plaintiffs allege that Huntington's actions towards the Opt-in Plaintiffs is aimed at discouraging putative plaintiffs from joining the suit. According to the Plaintiffs, Huntington has harassed and intimidated Opt-in Plaintiff Rebecca Gray to discourage putative plaintiffs from joining the suit. Huntington has also refused to pay overtime compensation accrued since February 27, 2011, when Huntington began requiring MLOs to record their hours worked, to Opt-in Plaintiffs Rebecca Gray, Erin Bishop, and Brian Heibel. This is in contrast to its treatment of non-plaintiffs.

The Plaintiffs ask for four distinct remedies for these alleged infractions: (1) a declaration that the Acknowledgments are void; (2) remedial notice; (3) restrictions on Huntington's communications with its MLOs; and (4) costs.

The Court shall analyze the Plaintiffs' motion through the lens of its powers to supervise and manage class actions. Having conditionally certified the Nationwide Class, the Court has "'both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties.'" *Hoffmann-La Roche v. Sperling,* 493 U.S. 165, 171 (1989) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)).

One district court in a similar procedural posture relied solely on its supervisory powers to rule on the plaintiff's motion for a protective order; it did not, as Huntington now requests, use the framework applied in motions for preliminary injunction. *See Belt v. Emcare Inc.*, 299 F. Supp. 2d 664 (E.D. Tex. 2003) (granting emergency protective order). The Court is nevertheless mindful that it must proceed cautiously when ruling on matters not yet fully briefed by both sides.

*1. Declaration that the Acknowledgments Are Void*

The Plaintiffs request that the Court declare the Acknowledgments void as a matter of law because Huntington obtained them in a coercive manner and because FLSA claims cannot be settled privately. Huntington, however, concedes that FLSA rights can only be settled through the supervision of the Secretary of Labor or the courts. *See*, *e.g.*, *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate.") (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)); *Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986) (FLSA has "bann[ed] private settlements of disputes about pay"); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982) ("There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may

enter a stipulated judgment after scrutinizing the settlement for fairness."); *McConnell v. Applied Performance Techs.*, No. C2-01-1273, 2002 U.S. Dist. LEXIS 27598, at *18-19 (S.D. Ohio Mar. 18, 2002) (finding settlement agreement did not bar plaintiff from bringing FLSA suit because waiver of rights under FLSA was void as a matter of law). Furthermore, Huntington's counsel has, on the record at oral argument, stated that Huntington does not intend to argue that MLOs who have signed the Acknowledgments have waived their right to join the lawsuit. Huntington, moreover, points out that the Acknowledgments do not include any statements of release or waiver that could be used against the signatories.

Because Huntington is not asserting that the Acknowledgments are valid settlements or waivers of liability, there is no need for the Court to declare them void. The Court accordingly **DENIES** this portion of the Plaintiffs' motion.

*2. Notice*

The Plaintiffs have submitted a proposed Notice of Collective Action Lawsuit (Doc. 30-2). Since filing that proposal, the Plaintiffs have requested the addition of corrective language necessary because of Huntington's distribution of the Acknowledgments. The Plaintiffs would like to include two pieces of additional information: (1) that the Acknowledgments are void, and (2) that signing a settlement form does not preclude participation in this lawsuit.

Having conditionally certified the Nationwide Class, the Court has the authority to supervise notice to potential plaintiffs. *See Hoffman-La Roche*, 493 U.S. at 172 ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative."). The Court accordingly **GRANTS** the Plaintiffs' request for the issuance of court-supervised notice. The content of the notice shall not include a statement that the Acknowledgments are void, for the reasons stated above, but shall include language clarifying

that signing an Acknowledgment does not preclude joining the lawsuit. Such language will help dispel any confusion generated by the forms. At this juncture, the Court **ORDERS** the Parties to submit within fourteen days of the issuance of this order a joint proposed notice or, if unable to agree, separate proposed notices for the Court's approval. The Court additionally **ORDERS** the Parties to submit within fourteen days of the issuance of this order joint proposed procedures for distribution of the notice or, if unable to agree, separate proposed distribution procedures.[8]

*3. Communications*

The Plaintiffs next request that the Court restrict Huntington's communications with its MLOs in the following ways: (1) prohibiting Huntington and its agents from communicating with potential plaintiffs in an effort to obtain a signed Acknowledgment; (2) prohibiting Huntington or its agents from intimidating, threatening, coercing, or in any manner discriminating against potential plaintiffs; (3) prohibiting Huntington or its agents from obtaining declarations from potential plaintiffs; and (4) prohibiting Huntington or its agents from communicating with potential plaintiffs concerning the payment of wages owed to them under the FLSA or the Ohio Wage Act. The Court notes that the evidence currently in the record is that the back wage payment process has been completed and that no additional Acknowledgments are being sought. The Plaintiffs' first and third requests, therefore, are moot.

The Plaintiffs' second and fourth requested restrictions are not moot but implicate Huntington's First Amendment rights. *See Mevorah v. Wells Fargo Home Mortg., Inc.*, No. 05-1175 MHP, 2005 U.S. Dist. LEXIS 28615, at *10 (N.D. Cal. Nov. 17, 2005)

---

[8]The Plaintiffs have suggested the following procedure: (1) first class mailing of the notice to the list provided by Huntington, once Huntington has responded to Plaintiffs' First Interrogatories; (2) posting of the Notice in Huntington's workplaces in a place regularly viewed by MLOs; (3) presentation of a copy of the Notice to current MLOs with one payroll check; and (4) emailing the Notice to current MLOs.

("[C]ommunications to potential class members by both parties are generally permitted, and also considered to constitute constitutionally protected speech.") (citing *Gulf Oil Co.*, 452 U.S. at 101). An instructive case is *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664 (E.D. Tex. 2003). In *Belt*, the court noted that it must balance its "broad authority to manage the collective action" against the defendant's First Amendment rights. *Id*. at 667 (citing *Gulf Oil*, 452 U.S. at 101). Collecting cases, the court explained as follows:

> Courts must base any order limiting communications between parties and potential class members on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of parties. Courts have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit. As commercial speech, ex parte communications tending to discourage absent class members from joining the suit may be limited by orders grounded in good cause and issued with a heightened sensitivity for First Amendment [c]oncerns. Courts examine four criteria to determine good cause in this context: the severity and likelihood of the perceived harm, the precision with which the order is drawn, the availability of a less onerous alternative, and the duration of the order.

*Id.* at 667-68 (internal citations omitted); *see also Oetinger v. First Residential Mortg. Network, Inc.*, NO. 3:06CV-381-H, 2008 U.S. Dist. LEXIS 41281, at *7 (W.D. Ky. May 23, 2008) (prohibiting "communications which would frustrate the policies of a collective action"); *Murton v. Measurecomp, LLC,* No. 1:07CV3127, 2008 U.S. Dist. LEXIS 108085, at *13-14 (N.D. Ohio, Dec. 2, 2008).

The Court finds that the Acknowledgments alone are not so misleading, coercive, or improperly aimed at undermining the class to justify a curtailment of Huntington's speech. In *Belt*, the act that justified granting a prohibition on communication between the defendant and potential class members was the mailing of a letter the day before the court-sanctioned notice was set to issue that discussed the pending litigation and grossly mischaracterized the nature of the suit. 299 F. Supp. 2d at 668. In *Mevorah*, the defendant's counsel telephoned potential class

members and gave misleading information about the nature of the class action. 2005 U.S. Dist. LEXIS 28615, at * 12. In the case *sub judice*, in contrast, Huntington decided to pay some overtime back wages before the Plaintiffs filed the lawsuit, and the Acknowledgment never even mentions the litigation, much less provides false or misleading information about it. *Cf. M.L. Stern Overtime Litig.,* 250 F.R.D. 492, 497 (S.D. Cal. 2008) (noting that communications between employer and employees who are potential class members is not improper even if it contains "'some self-serving advocacy for defendant's position'") (quoting *Keystone Tobacco Co. v. United States Tobacco Co.*, 238 F. Supp. 2d 151, 157 (D.D.C. 2002)). In any event, the curative language in the forthcoming notice explaining that the Acknowledgments are wholly unrelated to an MLO's ability to join the lawsuit will remedy any confusion generated by the Acknowledgments. A restriction on communication would therefore not be the least onerous alternative. *See Belt*, 299 F. Supp. 2d at 668 (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985)).

  The Plaintiffs' next set of allegations is more troubling. Opt-in Plaintiffs Erin Bishop, Brian Heibel, and Rebecca Gray have submitted affidavits in which they allege that, because they have joined the lawsuit, they have not received overtime compensation for hours worked beginning February 27, 2010; other MLOs, they claim, who have not joined the lawsuit have received such compensation. Plaintiff Gray also alleges that Human Resources representative Lynn Kuhlman told Gray that all MLOs except for those participating in the lawsuit would be paid overtime beginning in February 2010.

  Plaintiff Gray further alleges that Huntington has harassed her since she joined the lawsuit on January 18, 2011. She claims that Huntington investigated her twice for violations of company policy, first in March and again in April, for infractions she did not commit. Prior to

joining the lawsuit, Gray had an unblemished employment record. Plaintiff Bishop has stated that, having witnessed Huntington's actions towards Gray, she now fears retaliation for joining the lawsuit, as well.

Such behavior, if proven, would warrant more severe restrictions from this Court. The alleged retaliation is of the kind that could very well discourage potential plaintiffs from joining the class for fear of retaliation. It would also demonstrate Huntington's intent to undermine the class, which in turn justifies finding a "sufficient threat of abuse to warrant enjoining all defendants." *Belt*, 299 F. Supp. 2d at 669. At this time, however, the Court only has the Plaintiffs' evidence. In order to generate a "clear record" from which to make "specific findings," *Gulf Oil Co.*, 452 U.S. at 101, the Court will allow Huntington an opportunity to submit rebuttal evidence, including but not limited to affidavits from supporting witnesses. Huntington is hereby **ORDERED** to respond to these allegations within thirty days of the issuance of this order. During that time, the Plaintiffs' request for restricted communications is **HELD IN ABEYANCE** and Huntington is **ORDERED** not to communicate with potential plaintiffs about the lawsuit or to engage in coercive or retaliatory actions against current or potential plaintiffs.

*4. Costs*

Plaintiffs move that Huntington bear their costs in prosecuting the Emergency Motion and in mailing the remedial notice. As for the latter request, the Court finds that the addition of the corrective language does not significantly add to the cost of mailing the initial notice, and the Court in its discretion will not shift the cost for this process. As for the former, the plaintiffs have not indicated the source of the Court's authority for imposing monetary sanctions on Huntington. The Plaintiffs' motion for attorneys' fees and costs is therefore **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Conditional Class Certification, Expedited Discovery, and Court-Supervised Notice to Potential Opt-in Plaintiffs (Doc. 30) is **GRANTED** in part and **DENIED** in part. The Court **GRANTS** the Nationwide Class conditional class certification under the FLSA, and **ORDERS** the Parties to submit joint or separate proposed notices and a joint or separate notice procedure within fourteen days of this Order.

The Court **GRANTS** in part and **DENIES** in part the Plaintiffs' Emergency Motion for Protective Order, Cease and Desist Order, the Immediate Granting of Plaintiffs' Motion for Court Supervised Notice, Sanctions, and Corrective Actions (Doc. 40). In particular, The Plaintiffs's request for a declaration that the Acknowledgments are void as a matter of law is **DENIED**. The Plaintiffs' request for corrective notice is **GRANTED**. The Plaintiffs' request for restrictions on Huntington's communications with potential plaintiffs is **HELD IN ABEYANCE**. Huntington is **ORDERED** to respond to the Plaintiffs' allegations of retaliatory conduct within thirty days of the issuance of this order and is further is **ORDERED** not to communicate with potential plaintiffs about the lawsuit or to engage in coercive or retaliatory actions against current or potential plaintiffs until the Court has resolved the Plaintiffs' motion. The Plaintiffs' request for fees and costs is **DENIED**.

    **IT IS SO ORDERED.**

                                                            s/Algenon L. Marbley
                                                          **ALGENON L. MARBLEY**
                                                          **United States District Court Judge**

**DATE:** May 23, 2011